May Term, 1857.

NUTTER
v.
HARRIS.

This motion and a motion in arrest of judgment were overruled, and judgment was rendered for the plaintiff.

*J. S. Reid* and *E. Esteb*, for the appellant.
*W. P. Benton* and *J. B. Julian*, for the state.

(1) See *Jolly et al.* v. *The Terre Haute Bridge Co.*, *post*, and cases cited.

---

## NUTTER v. HARRIS.

Action to recover possession of a horse. *A.* had sold the horse to *B.*, and in exchange received two other horses. There was a *fi. fa.* out against *B.'s* property at the time of the exchange; but of this *B.* had no knowledge. Afterwards, *B.* made an assignment, including the horse, to his partner, *C.*, for the benefit of creditors. He delivered the horse to *C.*, but received him back, and kept him at livery. *A.* sold the two horses received from *B.*, to *D.*, in whose hands they were taken on the *fi. fa.* and sold. *A.* made compensation to *D.*, and brought this suit against *C.* Verdict and judgment for the plaintiff. The application of the statute of frauds to the case, was not considered in the Court below. *Held*, 1. That the case is governed by the statute of frauds. 2. That the question was upon the *bona fides* of the assignment of the property to *C.* 3. That if there was not an actual, visible, continuous change of possession, the transaction was *prima facie* fraud-

ulent. 4. That upon that point, and all others affecting the title of *C.*, the question of fraudulent intent was for the jury.

A pre-existing debt is a sufficient consideration to support an assignment, if the assignment was otherwise made in good faith.

May Term,
1857.

NUTTER
v.
HARRIS.

Wednesday,
May 27.

APPEAL from the *Union* Circuit Court.

GOOKINS, J.—*Harris* brought an action against *Nutter*, to recover a horse alleged to be unlawfully detained. Answer, 1. A denial; 2. Property in the defendant; on which issue was joined. There was a jury trial. Verdict that the horse was the property of the plaintiff; that he was unlawfully detained by the defendant; and that he was of the value of 118 dollars. A motion for a new trial was overruled, and judgment rendered that the plaintiff recover the horse, or, if he could not be had, that he recover of the defendant 118 dollars, as assessed, &c. No question is made upon the form of this judgment. See 2 R. S. p. 122, s. 374.

*Harris*, to show title to the horse, proved by one *Cully*, that he sold the horse to *Cully*, about the 15th of *May*, 1855, and received in exchange two other horses, agreeing to pay *Cully* 75 dollars for the difference. At that time a *fi. fa.* was in the hands of the sheriff against *Cully*, in favor of *Yaryan*, which was a lien on *Cully's* property, but of which he testified he had had no knowledge. *Cully* was in partnership with the defendant, *Nutter*, and there were, at the same time, executions in the sheriff's hands against *Cully* and *Nutter*, of which he knew, but of which he did not inform *Harris;* but he testified that these were arranged. On the 29th of *May*, *Cully* made an assignment for the benefit of his creditors, to *Nutter*—whom he preferred—covering his interest in the partnership, and his own property, real and personal, except his household furniture. The assignment included the horse in controversy, and the demand of 75 dollars against *Harris*. He delivered the horse to *Nutter*, at the time, but received him back, and kept him at livery, and still had him in possession, as the agent of *Nutter*. He testified that the assignment was made in good faith. It was proved that *Harris* sold the two horses he got of *Cully*, to one *Keffer*. The

May Term,
1857.

NUTTER
v.
HARRIS.

sheriff, having *Yaryan's* execution in his hands, seized the two horses which *Cully* had exchanged to *Harris*, in the hands of *Keffer*, and sold them; after which, *Harris*, having made compensation to *Keffer*, demanded the horse in dispute of *Nutter*, and brought this action.

*Yaryan* was called as a witness; but by which party does not appear. He testified that when he delivered his execution to the sheriff, he requested him to be as mild with *Cully* as possible; but that *Cully* was about to make an assignment, and he charged him "not to let the property slip." He did not direct the levy, and was not aware of the exchange.

The plaintiff proved that the two horses were seized in *Keffer's* hands, by the order of *Nutter*.

The Court instructed the jury, in substance, that the plaintiff's right to recover depended on the question whether the transaction between *Cully* and *Harris* was in good faith, or fraudulent; that if fraudulent on the part of *Cully*, the property was not changed; that the assignment to *Nutter*, though *bona fide*, if made in payment of a pre-existing debt, did not vest the title to the property in him as against the plaintiff; and that, if the exchange between *Cully* and *Harris* was in good faith on the part of *Cully*, the verdict must be for the defendant. The Court, upon the prayer of the plaintiff, instructed the jury that the vendor of personal property warrants the title; and if he has no title, it is a fraud in law upon the vendee, and vitiates the transfer. Also, that if they believed a fraud was perpetrated upon *Harris* by the exchange, it would have the same effect in law, though the party did not design it, as if he had done it intentionally. Also, that fraud is a question of fact, to be determined by the jury, from the evidence; that if the jury believed a fraud had been practised upon *Harris* in the exchange with *Cully*, and that the horses got by *Harris* were afterwards seized and sold on an execution against *Cully* that was a lien upon them at the time of the exchange, *Harris* would have the right to maintain this suit for the recovery of the horse he gave in exchange—the de-

fendant holding the horse under an assignment as an indemnity or security on past debts of *Cully* and *Nutter*.

These instructions the defendant excepted to, and prayed another, which was refused, that if the jury believed, from the evidence, that the plaintiff "traded" the horse in controversy to *Cully*, who afterwards—the trade being unrescinded by *Harris*—sold and assigned the horse to the defendant in good faith, and for a valuable consideration, they must find for the defendant.

We think this verdict cannot be sustained. From the fact that neither party has referred in argument to the statute of frauds, we presume its bearing upon the case cannot have been considered in the Circuit Court. It may have an influence upon the case in more aspects than one. Whether the transfer by *Cully* to *Nutter* was followed by such a change of possession as is required by the eighth section of that statute (1 R. S. p. 301), was an important inquiry. Again, the same statute (p. 303, s. 21,) declares that the question of fraudulent intent, in all cases arising under the provisions of that act, shall be deemed a question of fact.

The first question on which *Harris's* right of recovery depended was, whether *Nutter* was a *bona fide* purchaser. As to that, the case was governed by the eighth and seventeenth sections of the statute of frauds. If there was not an actual, visible, and continuous change of possession, the transaction was *prima facie* fraudulent; but upon that point, and upon all others affecting the title of *Nutter*, the question of fraudulent intent was for the jury, and there was evidence upon which they might have found either way. It is true they were told, in reference to the exchange between *Harris* and *Cully*, that whether it was fraudulent or not was a question for their consideration; and by the charge which the Court gave, the whole case was made to turn upon the *bona fides* of that transaction. Further, the refusal of the Court to give the instruction prayed by the defendant, that if the transaction between *Cully* and *Nutter* was in good faith, they must find for the defendant, shows that *Nutter's* title was passed upon by the Court, and not

by the jury; which defeated the operation of the twenty-first section of the statute. We refer here to those assignments which may or may not be valid, and not to those which the law adjudges to be fraudulent on their face, and consequently void—as in *Barney* v. *Griffin*, 2 Comst. 365, and *Henderson* v. *Bliss*, at the last term of this Court (1). We are of the opinion that the question should have been left to the jury. *Stewart* v. *English*, 6 Ind. R. 176.

We are also of the opinion, that a pre-existing debt is a sufficient consideration to support an assignment, if otherwise in good faith. *Work* v. *Brayton*, 5 Ind. R. 396.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to grant a new trial.

*J. F. Gardner* and *J. Yaryan*, for the appellant (2).

*N. Trusler* and *B. F. Claypool*, for the appellee (3).

(1) 8 Ind. R. 100. That case is erroneously reported as having been appealed from the Common Pleas. It was appealed from the *Marion* Circuit Court.

(2) Counsel for the appellant made the following points : 1. The pleadings required the plaintiff to show property in himself, which he wholly failed to do. *Simcoke* v. *Frederick*, 1 Ind. R. 54, and authorities there cited. 2. The charges of the Court were confused, irrelevant, and well calculated to mislead the jury.